UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BIENVENUE MBITUYIMANA,

                    Petitioner,

v.

ROBERT LYNCH et al,

                    Respondents.

_____/

Case No. 1:26-cv-1333

Honorable Jane M. Beckering

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

## Discussion

### I.      Procedural History

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondent to release Petitioner. (Pet., ECF No. 1, PageID.17.)

In an Order entered on April 28, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on May 1, 2026, (ECF

No. 4). Petitioner filed his reply on May 5, 2026, (ECF No. 5) and his corrected reply on May 6, 2026, (ECF No. 7).

## II.    Factual Background

Petitioner is a native and citizen of the Democratic Republic of the Congo. (Courtney Decl. ¶ 4, ECF No. 4-1, PageID.31.) Petitioner entered the United States as a refugee on September 30, 2015. (*Id.*) On October 23, 2017, the United States Citizenship and Immigration Services (USCIS) approved Petitioner's Application to Register Permanent Residence or Adjust Status, and granted him permanent resident status, retroactive to September 30, 2015. (*Id.* at ¶ 5.)

On December 23, 2020, Petitioner was convicted of Second Degree Criminal Sexual Conduct (personal injury) in the 17th Judicial Circuit Court located in Grand Rapids, Michigan. (*Id.*)

On February 8, 2021, ICE agents encountered Petitioner and lodged an Immigration Detainer-Notice of Action. (Courtney Decl. ¶ 7, ECF No. 4-1, PageID.32.) On December 21, 2021, ICE agents served Petitioner with a Warrant of Arrest and a Notice to Appear (NTA) and arrested Petitioner. (*Id.* at ¶¶ 8–9.) The NTA charged Petitioner with removability pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA) in that at any time after admission he had been convicted of an aggravated felony, to wit: a crime of violence. (*Id.*)

On February 9, 2022, an immigration judge denied Petitioner's request to be released on a bond and found that Petitioner was subject to mandatory detention. (*Id.* at ¶ 10.) On March 1, 2022, Petitioner submitted an Application for Asylum and Withholding of Removal to the Detroit Immigration Court. (*Id.* at ¶ 11.)

On April 20, 2022, a Detroit immigration judge denied Petitioner's applications for Asylum and Withholding of Removal and ordered Petitioner removed from the United States. (Courtney Decl. ¶ 12, ECF No. 4-1, PageID.33.) The immigration judge granted Petitioner's application for

2

deferral of removal to the Democratic Republic of the Congo under the United Nations Convention Against Torture. (*Id*.) It appears that, at some point, Petitioner was released from ICE custody.

Petitioner was again taken into custody by ICE agents on December 9, 2025. (Pet., ECF No. 1, PageID.2, 4.) On December 12, 2025, Petitioner was convicted in the 48th Circuit Court in Allegan, Michigan of aggravated indecent exposure and interfering with a police investigation. (Courtney Decl. ¶ 13, ECF No. 4-1, PageID.33.)

On February 25, 2026, ICE Headquarters Removal and International Operations (HQRIO) informed the local ICE office that Petitioner was added to the list of persons to be nominated for removal to a third country. (*Id*. at ¶ 15.) On March 03, 2026, Petitioner was served with a continued detention letter which informed him that his detention was reviewed and he would remain detained. (*Id*. at ¶ 16.) On March 06, 2026, Petitioner notified ICE, via email, that Petitioner is not opposed to being removed to a country other than the Democratic Republic of Congo. (*Id*. at ¶ 17, PageID.34.) On March 18, 2026, HQRIO affirmed that Petitioner was placed on the third country removal list for removal to Uganda. (*Id*. at ¶ 18.) Removal missions to Uganda are anticipated to occur frequently. (*Id*. at ¶ 19.) The last mission was completed on April 2, 2026. (*Id*.) Another mission is scheduled for May 2026, and it is anticipated that removal missions to Uganda will be scheduled monthly going forward. (*Id*.)

## III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-

3

related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV.    Analysis

Given that Petitioner has a final order of deportation, which orders his removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. Petitioner, however, contends that his detention is unlawful. (Pet., ECF No. 1, PageID.7.) In response, Respondent argues that Petitioner's continued "detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis* 533 U.S. 678, 701 (2001)." (Resp., ECF No. 4, PageID.25.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, Petitioner's order of removal became final on May 20, 2022. (Pet., ECF No. 1, PageID.1–2; Order Immigration Judge, ECF No. 7-1, PageID.87–94; *see id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[1] "[O]nce [a noncitizen's] removal

---

[1] The Court notes that the Supreme Court held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government

4

is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

"Although the Supreme Court established a six-month period of presumptively reasonable detention," courts have found that *Zadvydas* does "not preclude a detainee from challenging the reasonableness of his detention before such time." *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–96 (D.N.J. 2025) (citing, *inter alia*, *Zadvydas*, 533 U.S. at 699–701; *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706–07 (S.D. Tex. 2020); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018)); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits." (citations omitted)). That is, during the six-month period of detention, "[t]he presumption of reasonableness is the default," and "the government bears no burden to justify detention," "but if a person 'can prove' that his removal is not reasonably foreseeable, then he can overcome that presumption." *Id.* at 397 (citations omitted).

Here, Petitioner was taken into custody by ERO on December 9, 2025. (Pet., ECF No. 1, PageID.2, 4.) At the time that Petitioner filed his § 2241 petition on April 23, 2026, he had not been detained for more than six months. (ECF. No. 1.) Because Petitioner has not proven that his removal is not reasonably foreseeable, the Court will deny Petitioner's § 2241 petition without prejudice.

---

bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

5

**V.      Other Claims and Other Forms of Relief**

Because Petitioner's § 2241 petition is not ripe, the Court does not address the other claims and other requested relief in Petitioner's § 2241 petition.

**<u>Conclusion</u>**

For the reasons discussed above, the Court will enter a Judgment denying Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.


Dated:  _____June 15, 2026_____                    /s/ Jane M. Beckering_____
                                                                                  Jane M. Beckering
                                                                                  United States District Judge

6